# 14-2689-cv(L)

**14-2691 (CON), 14-2692 (CON), 14-2693 (CON), 14-2696 (CON), 14-2697 (CON), 14-2698 (CON), 14-2699 (CON), 14-2700 (CON), 14-2701 (CON), 14-2702 (CON), 14-2703 (CON), 14-2704 (CON), 14-2705 (CON), 14-2709 (CON), 14-2711 (CON), 14-2713 (CON), 14-2714 (CON), 14-2715 (CON), 14-2718 (CON), 14-2722 (CON), 14-2723 (CON), 14-2724 (CON), 14-2728 (CON), 14-2732 (CON), 14-2736 (CON)**

## United States Court of Appeals
### *for the*
### Second Circuit

▶▶◀◀

AURELIUS CAPITAL MASTER, LTD., AURELIUS OPPORTUNITIES FUND II, LLC, ACP MASTER, LTD., NML CAPITAL, LTD., OLIFANT FUND, LTD., BLUE ANGEL CAPITAL I LLC, PABLO ALBERTO VARELA, LILA INES BURGUENO, MIRTA SUSANA DIEGUEZ, MARIA EVANGELINA CARBALLO, LEANDRO DANIEL POMILIO, SUSANA AQUERRETA, MARIA ELENA CORRAL, TERESA MUNOZ DE CORRAL, NORMA ELSA LAVORATO, CARMEN IRMA LAVORATO, CESAR RUBEN VAZQUEZ, NORMA HAYDEE GINES, MARTZ AZUCENA VAZQUEZ,

*Plaintiffs-Appellees,*

– v. –

THE REPUBLIC OF ARGENTINA,

*Defendant- Appellant,*

CITIBANK, N.A.,

*Movant-Interested Party-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF DEFENDANT-APPELLANT
## THE REPUBLIC OF ARGENTINA

*Of Counsel:*
Jonathan I. Blackman
Carmine D. Boccuzzi
Michael M. Brennan

CLEARY GOTTLIEB STEEN & HAMILTON LLP
*Attorneys for Defendant-Appellant*
One Liberty Plaza
New York, New York 10006
212-225-2000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT .......................................................2

ISSUES PRESENTED FOR REVIEW ..................................................3

STATEMENT OF THE CASE ..............................................................4

    I.   THE ARGENTINE LAW BONDS ...................................4

    II.   THE *PARI PASSU* INJUNCTIONS ..............................6

    III.  THE DISTRICT COURT CORRECTLY ALLOWS CITIBANK TO MAKE PAYMENT ON THE ARGENTINE LAW BONDS ................8

    IV.  PLAINTIFFS SEEK RECONSIDERATION OF THE JUNE ORDER ..............................................................11

    V.   THE JULY 28 ORDER SUBJECT TO THIS APPEAL.....................16

SUMMARY OF ARGUMENT ...........................................................18

ARGUMENT .....................................................................................20

THE JULY 28 ORDER MUST BE REVERSED BECAUSE THERE IS NO BASIS TO INTERFERE WITH THE ARGENTINE LAW BONDS .......................................................................20

    A.   THE INJUNCTIONS APPLY ONLY TO EXCHANGE BONDS PAYABLE TO THE NEW YORK TRUSTEE ........20

    B.   THE DISTRICT COURT ERRED IN EXTENDING THE INJUNCTIONS TO ARGENTINE LAW BONDS, INCLUDING THOSE THAT ARE INDISPUTABLY NOT EXCHANGE BONDS ...................................................24

CONCLUSION ..................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) ............................................................. 29

*Bridgeport Guardians, Inc. v. Delmonte*,
602 F.3d 469 (2d Cir. 2010) ............................................................. 2-3

*Brooks v. Guiliani*,
84 F.3d 1454 (2d Cir. 1996) ............................................................. 24

*Jordan v. Metro. Life Ins. Co.*,
280 F. Supp. 2d 104 (S.D.N.Y. 2003) ............................................. 26

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
861 F. Supp. 2d 262 (S.D.N.Y. 2012) ............................................. 15

*Litwin v. OceanFreight, Inc.*,
865 F. Supp. 2d 385 (S.D.N.Y. 2011) ............................................. 27

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ......................................... 1, 6-7, 22, 23

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013) ................................................. 1, 7, 21

*NML Capital, Ltd. v. Republic of Argentina*,
No. 08 Civ. 6978 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) ....... 20-21, 23

*RST (2005) Inc. v. Research in Motion, Ltd.*,
597 F. Supp. 2d 362 (S.D.N.Y. 2009) ............................................. 15

*Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*,
234 F.2d 633 (2d Cir. 1956) ......................................................... 28-29

**Rules and Statutes**

28 U.S.C. § 1291 ............................................................................ 3

28 U.S.C. § 1292 ............................................................................ 2

**Page(s)**

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice & Procedure Civ. § 2945
(3d ed. 2013) ..................................................................................     28

Floyd Norris, *The Muddled Case of Argentine Bonds*, N.Y. Times, July 24,
2014, http://www.nytimes.com/2014/07/25/business/rulings-add-to-the-
mess-in-argentine-bonds.html?_r=0 ..............................................     18

Joseph E. Stiglitz and Martin Guzman, *Argentina Default?*, The Guardian,
Aug. 7, 2014, http://www.theguardian.com/business/2014/aug/07/argentina-
default-griesafault-more-accurate ..................................................     18

## PRELIMINARY STATEMENT

In its decisions in *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012), and *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013), this Court affirmed unprecedented permanent injunctions (the "Injunctions").  The Injunctions prohibit payment of scheduled interest on the Republic of Argentina's ("Republic") Exchange Bonds payable to a New York Trustee for those bondholders, unless the Republic has satisfied the *pari passu* clause of its defaulted debt, as this Court interpreted it, by making full payment of accelerated principal and all overdue interest on defaulted debt that chose not to participate in the Republic's 2005 and 2010 exchange offers.

The result was not to force payment of this holdout debt, which would be impossible; the amount of holdout debt now totals approximately $20 billion, while the Republic's *total* reserves are less than $30 billion – although, of course, even that comparison ignores that reserves must be used for critical macroeconomic purposes, such as supporting the Republic's currency and providing foreign exchange for all its citizens' imports of goods and services.  As the Republic had warned, the Injunctions resulted in a situation where receipt of June 30, 2014 payments by Exchange Bondholders, whose legal right to such payments has never been questioned, has now been blocked by court order.  The breach of the *pari passu* clause that the Court found with respect to payment of

Exchange Bonds to the New York Trustee, and the remedy it ordered based on that finding, have not solved the Argentina debt problem, but have made it worse.

The July 28, 2014 Order ("July 28 Order") under appeal further exacerbates the situation. It extends the Injunctions that this Court affirmed beyond the Exchange Bonds payable to a New York Trustee that were the sole subject of this Court's decisions, to reach additional Argentine debt that either does not constitute Exchange Bonds even under plaintiffs' view, and/or in any event is not covered by either the plaintiffs' request for the Injunctions or this Court's decisions and rationale upholding them. It is instead a groundless expansion of those Injunctions that creates more injury, with no corresponding legal basis or equitable gain. The July 28 Order should be reversed.[1]

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the underlying actions against the Republic under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and 1605(a)(1) (SPA-7, SPA-12). The Republic filed timely notices of appeal of the July 28 Order on July 29, 2014.

This Court has jurisdiction over the appeals of the July 28 Order under 28 U.S.C. § 1292 because it is an "order modifying an injunction." *Bridgeport*

_____

[1] The Republic fully joins the arguments in support of vacating the July 28 Order of Citibank, N.A. ("Citibank"), whose separate appeals from the July 28 Order have been consolidated with the Republic's appeals.

2

*Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). The Court also has

jurisdiction over the appeals of the July 28 Order under 28 U.S.C. § 1291, because

the July 28 Order is itself a new permanent injunction.

## ISSUES PRESENTED FOR REVIEW

1.          Did the district court err when it extended the Injunctions, which were

entered and affirmed by this Court, specifically enforcing the *pari passu* clause by

enjoining payments on Exchange Bonds payable to a New York Trustee, to

payments on bonds that are not Exchange Bonds and/or are not payable to the New

York Trustee, and that are therefore not subject to the Injunctions by their terms,

were not addressed by this Court in its prior rulings, and go beyond the expressed

rationale of those rulings?

2.          Did the district court err by extending the Injunctions to additional

bond payments without considering the resulting negative impact on third parties

who, until then, had not been affected by the Injunctions?

3.          Did the district court err by ordering the parties to distinguish between

payments on what in plaintiffs' view are Exchange Bonds and non-Exchange

Bonds, notwithstanding that the only record evidence on the subject shows that no

such distinction can be made and that the rights of third-party bondholders will be

disrupted as a result?

3

## STATEMENT OF THE CASE

These appeals arise from actions in the Southern District of New York (Griesa, J.) against the Republic related to the Republic's default, following its 2001 economic crisis.  The Republic appeals from the July 28 Order to the extent the district court erroneously ruled that the Injunctions enjoin payments due after July 30, 2014 on Argentine-law governed, U.S. dollar-denominated bonds payable exclusively in Argentina (the "Argentine Law Bonds"), if the Republic does not make a "Ratable Payment" to NML Capital, Ltd. and the other plaintiffs in these appeals.  SPA-4.  In so ruling, the district court granted in part plaintiffs' motion for partial reconsideration of its June 27, 2014 Order that had granted Citibank's motion to clarify or modify the Injunctions to exclude such Argentine local debt from their scope.  *See id.*

## I.    THE ARGENTINE LAW BONDS

The Argentine Law Bonds at issue in this appeal were issued in two different contexts:  First, the Republic issued $2.3 billion worth of Argentine Law Bonds in connection with its 2005 and 2010 exchange offers, although in a separate exchange transaction from the one involving the New York Trustee, offered solely in Argentina to prior holders of Argentine domestically-issued debt.  Second, and totally outside of the context of the 2005 and 2010 exchange offers, the Republic issued approximately $4.3 billion in Argentine Law Bonds at various

4

points from 2007 to 2011, and it issued an additional $1.75 billion worth of

Argentine Law Bonds to the Spanish oil company Repsol, S.A. ("Repsol") in 2014

as part of a negotiated settlement of the disputes between Repsol and the Republic,

which Repsol in turn re-sold in the market.  All Argentine Law Bonds were issued

pursuant to 2004 and 2010 Presidential Decrees.  *See* Argentine Presidential

Decree No. 1735/2004, dated Dec. 9, 2004 (English translation) (A-1498-1503);

Argentine Presidential Decree No. 1735/2004, dated Apr. 26, 2010 (English

translation) (A-1512-1524).  None were submitted to the jurisdiction of U.S. courts.

None can be considered an Exchange Bond within the meaning of the Court's

previous decisions.

Argentine Law Bonds issued in connection with the Argentine local

exchanges are indistinguishable from the Argentine Law Bonds issued at different

times to other persons, because the Republic issued them through a security

reopening, a process by which an issuer issues additional amounts of a previously

issued security.  Issuing securities through a reopening is a common practice that

benefits beneficial interest holders because the newly issued securities are fungible

with the original securities, which makes them an easily transferrable, liquid asset.

Fungible bonds issued pursuant to a reopening have by definition the same

identification code (an International Securities Identification Number ("ISIN") or

Committee on Uniform Security Identification Procedures ("CUSIP") number) as

previously issued bonds.  Distinguishing between or tracing the origins of bonds

with the same ISIN, such as the Argentine Law Bonds at issue in this appeal, is

"operationally impossible," even for the world's most sophisticated financial

institutions.  Letter from K. Wagner to Judge Griesa, dated July 28, 2014, at 2 (A-

2187).

## II.    THE *PARI PASSU* INJUNCTIONS

On February 23, 2012, the district court entered the unprecedented

Injunctions purporting to specifically enforce the so-called *pari passu* clause

contained in the Republic's debt documentation.  Order, *NML Capital, Ltd. v.*

*Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012) ("Feb.

23, 2012 Order") (A-1340-45).  The Injunctions prevent the Republic from making

any scheduled interest payments on Exchange Bonds payable to The Bank of New

York Mellon ("BNYM"), the Indenture Trustee for those bonds, unless the

Republic pays plaintiffs full principal and interest on plaintiffs' defaulted debt.  *Id.*

¶ 2 (A-1342-44).  The district court then stayed the Injunctions pending the

Republic's appeal.  Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ.

6978 (TPG) (S.D.N.Y. Mar. 5, 2012) (A-1346-50).

Shortly after this Court on October 26, 2012 in part affirmed the

Injunctions and remanded to the district court for further proceedings, *see NML*

*Capital, Ltd.*, 699 F.3d at 246, the district court on November 21, 2012 expanded

6

the reach of the Injunctions, and also vacated its prior stay.  Order Concerning the

March 5, 2012 Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ.

6978 (TPG) (S.D.N.Y. Nov. 21, 2012) (A-3025).  This Court then stayed the

Injunctions on November 28, 2012, but thereafter on August 23, 2013 affirmed

them and extended its stay "pending resolution of a timely petition to the Supreme

Court for a writ of *certiorari*."  *NML Capital, Ltd.*, 727 F.3d at 238.  On June 16,

2014, the Supreme Court denied the Republic's *certiorari* petition, and this Court

lifted its stay two days later on June 18, 2014.

      The proceedings that led to the Injunctions addressed *only* bonds on

which payments of principal and interest are made to BNYM.  *See, e.g.*, NML

Summary Judgment Br. at 18-19 n.12, Oct. 20, 2012, Dkt. # 230 (specifically

targeting payments on 2005 and 2010 bonds transferred to BNYM); NML

Renewed Specific Performance Br. at 7, Jan. 6, 2012, Dkt. # 361 ("Under the 2005

Exchange Offers, Argentina provides funds to the Bank of New York or that

Bank's 'trustee paying agent'"); *id.* at 7 n.2 ("Under the 2010 Exchange Bonds, the

Republic provides funds to BNY Mellon"); Pls. Remand Br. at 10-11, Nov. 13,

2012, Dkt. # 390 ("Argentina transfers funds to [BNYM]" when "making its

payments on the Exchange Bonds" subject to the district court's orders).

      Neither the district court in the decisions leading to the Injunctions,

nor this Court in its two opinions discussing them, addressed any issues dealing

with any bonds not payable to a New York Trustee, and certainly not the Argentine Law Bonds that are paid exclusively in Argentina.  *See* Amended Feb. 23, 2012 Order at 5-6, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 21, 2012) (A-1463-64) (naming as participants in Exchange Bonds' "payment process" "The Bank of New York Mellon," "The Bank of New York Depository," "The Bank of New York (Luxembourg S.A.)," and the "Bank of New York Mellon (London)").  *A fortiori*, neither the district court, nor this Court's prior decisions, ever addressed whether the Argentine Law Bonds *were* Exchange Bonds at all, or if they were, the different legal and equitable considerations raised by enjoining payments of foreign law instruments payable through foreign channels that do not involve any actions in the United States.  The propriety of both contractual issues concerning the extent of the *pari passu* clause and of enjoining payment on Argentine Law Bonds, including the issues of sovereignty, extraterritoriality, and comity involved in enjoining an entirely local transaction by a foreign state in its own territory, was never raised by plaintiffs, and was never discussed, much less litigated or decided by this Court.

## III.    THE DISTRICT COURT CORRECTLY ALLOWS CITIBANK TO MAKE PAYMENT ON THE ARGENTINE LAW BONDS

During the pendency of the appeals to this Court by the Republic and various third parties adversely affected by the Injunctions, Citibank sought from the district court on May 22, 2013 clarification that, in the event the Republic did

8

not pay plaintiffs' claims in full, the Injunctions do not prevent Citibank's

Argentine branch from processing payments in Argentina on the Argentine Law

Bonds.  *See* Letter from J. Kerr to Judge Griesa, dated May 23, 2013, at 2 (A-1780-

81).  Citibank sought this clarification because it was not named in the Injunctions,

and because the Argentine Law Bonds differ fundamentally from the bonds

described in the Injunctions and the district court's accompanying November 2012

opinion.  Unlike the Exchange Bonds that were the focus and subject of the district

court's rulings and the Injunctions, the Argentine Law Bonds are sitused in

Argentina, are payable exclusively in Argentina, and contain no contractual

submission to U.S. jurisdiction.  *See* Prospectus Supplement at S-42, S-103, S-113-

S-115, S-118 (A-2097-2102).  This is not surprising:  they were issued in legally

and factually separate Argentine transactions, that either had nothing at all to do

with the Republic's 2001 default and the 2005 and 2010 exchange offers that

sought to resolve it, or were issued solely in exchange for prior defaulted

Argentine debt that was likewise issued solely in Argentina, in a separate

Argentine exchange offer made only to the holders of that Argentine domestic

debt.  *See* Argentine Presidential Decree No. 1735/2004, dated Dec. 9, 2004

(English translation) (A-1498-1503) (distinguishing between procedure for

Argentine Law issuance and prospectus for international offer); Argentine

Presidential Decree No. 1735/2004, dated Apr. 26, 2010 (English translation) (A-1512-1524) (same).

Citibank correctly argued that it should not be bound by the Injunctions under the act of state doctrine and because, among other reasons, the Injunctions' application to it would subject it to criminal and civil sanctions under Argentine law.  In an Order entered on May 24, 2013, the district court declined to rule on Citibank's motion because those "matters" were "before the Court of Appeals."  Order at 1, *NML Capital v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. May 24, 2013) (A-1786).

After the denial of the Republic's *certiorari* petition, and in advance of the scheduled June 30, 2014 interest payment on the Argentine Law Bonds, Citibank on June 19, 2014 renewed its motion for clarification of the Injunctions, once more asking the district court for confirmation that it was not subject to those orders.  Declaration of Karen E. Wagner, *NML Capital, Ltd v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. June 19, 2014) (A-1789-91).  Plaintiffs opposed, contending, *inter alia*, that the Injunctions prohibited Citibank from processing payments on Argentine Law Bonds if the Republic does not pay plaintiffs in full because those bonds were purportedly Exchange Bonds as defined in the Injunctions.  *See* June 27, 2014 Hr'g Tr. at 27:10-15 (A-1846).

10

On June 27, 2014, after the Republic had transferred funds to Citibank's Argentine branch in connection with its scheduled June 30, 2014 interest payment on the Argentine Law Bonds, the district court granted Citibank's motion and held that the Injunctions "do not as a matter of law prohibit payments by Citibank, N.A.'s Argentine branch" on Argentine Law Bonds, *i.e.*, "Peso- and U.S. Dollar-denominated bonds – governed by Argentine law and payable in Argentina – that were issued by the Republic of Argentina in 2005 and 2010." Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. June 27, 2014) (A-1851-52). In reaching that conclusion, the court expressly "disagree[d]" with plaintiffs' erroneous assertion that the Argentine Law Bonds are "within the scope of [the] exchange bonds" covered by the Injunctions. June 27, 2014 Hr'g Tr. at 27:10-17 (A-1840). At that point, the funds held by Citibank were no longer property of the Republic upon payment by the Republic to Citibank, and were owed by Citibank to the holders of the Argentine Law Bonds.

## IV.  PLAINTIFFS SEEK RECONSIDERATION OF THE JUNE ORDER

Plaintiffs on July 11, 2014 filed a motion asking the district court to reconsider its ruling with respect to a subset of the Argentine Law Bonds – the U.S. dollar-denominated Argentine Law Bonds. Plaintiffs' Notice of Motion for Reconsideration, *NML Capital, Ltd v. Republic of Argentina*, No. 08 Civ. 6978

11

(TPG) (S.D.N.Y. July 10, 2014) (A-2033-36). Plaintiffs conceded that the peso-denominated Argentine Law Bonds are not covered by the Injunctions because, as peso-denominated instruments, they do not meet the contractual definition of "External Indebtedness" subject to the *pari passu* clause. July 22, 2014 Hr'g Tr. at 4:1-4 (A-2121).[2] However, plaintiffs argued that the dollar-denominated Argentine Law Bonds should be covered by the Injunctions because they purportedly are both Exchange Bonds and "External Indebtedness" under the *pari passu* clause. *Id.* at 5:7-13 (A-2122). This new position differed from the assertions plaintiffs made in opposing Citibank's motion for clarification, where plaintiffs argued that whether the Argentine Law Bonds constituted "External Indebtedness" was "beside the point" because the Injunctions' reach "may be broader, narrower, or both." Plaintiffs' Opposition to Citibank, N.A.'s Motion for "Clarification or Modification" at 7, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. June 26, 2014).

On July 22, 2014, the district court heard argument concerning plaintiffs' motion for reconsideration as well as several other motions seeking clarification or modification of the Injunctions. The motions included: i) a motion

---

[2] They also conceded that "Domestic Foreign Currency Indebtedness," which includes securities issued "in a currency other than the lawful currency of the Republic" and "offered exclusively within the Republic of Argentina," (A-391-92), does not constitute External Indebtedness under this definition. Plaintiffs' Reconsideration Br. at 2 n.1, *NML Capital v. Republic of Argentina* No. 08 Civ. 6978 (TPG) (S.D.N.Y. July 10, 2014).

by holders of euro-denominated English-law Republic debt seeking modification of the Injunctions to permit payments to them; ii) motions by Euroclear Bank SA/NV and Clearstream Banking S.A. for clarification that, consistent with the June 27 Order, they, like Citibank, could make payments on the Argentine Law Bonds; and iii) a motion by JP Morgan Chase Bank requesting clarification that it could make payments in Tokyo on yen-denominated, Japanese-law Republic debt. The Republic supported each of these motions as well as Citibank's opposition to plaintiffs' motion for reconsideration.[3]

At the July 22 argument, the district court expressed confusion concerning the overbreadth and the operation of the Injunctions. *See, e.g.*, July 22 Hr'g Tr. at 23:20-25:6 (A-2140-42). The court did not address any of the jurisdictional arguments concerning the entities in the international funds transfer system located outside the United States, notwithstanding the unprecedented extraterritorial reach of the Injunctions. With respect to the primary issue that the court did cover – whether the Injunctions apply to the Argentine Law Bonds – the

---

[3] In addition, the district court considered a motion for clarification by BNYM seeking the court's permission to hold the June 30 interest payment funds it had received in its account in Argentina pending the resolution of the broader litigation before the district court. On August 6, 2014, the district court entered an order holding that Argentina's payment to BNYM violated the Injunctions and directing BNYM to "retain the Funds in its accounts at BCRA [the Central Bank of Argentina] pending further Order of this Court." Order at 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (A-3340).

court expressed unfamiliarity with key facts, including whether the Argentine Law Bonds are Exchange Bonds, and the reach of the Injunctions.  *Id.* at 19:25-22:7 (A-2136-39).

After the court reserved decision on the matters before it, in further letters submitted to the district court, both Citibank and the Republic demonstrated that the vast majority of Argentine Law Bonds were not issued in connection with any exchange offers, and so are not subject to the Injunctions.  Letter from K. Wagner to Judge Griesa, dated July 23, 2014, at 2 (A-2175); Letter from C. Boccuzzi to Judge Griesa, dated July 27, 2014, at 1-2 (A-2180-81).  Specifically, the Republic noted that over 72% – or $6.1 billion in outstanding principal – of the Argentine Law Bonds in no way could be characterized as Exchange Bonds.  (A-2181).  These bonds, most of which were issued long before the district court entered its *pari passu* orders, include at least $1.75 billion in outstanding principal amount of Argentine Law Bonds issued pursuant to a 2004 Presidential Decree as consideration by the Republic for the settlement of its disputes with Repsol.

The remaining approximately 28% of the Argentine Law Bonds, while issued in exchange for defaulted debt in 2005 and 2010, were issued in a separate Argentine exchange that was offered solely to the holders of defaulted Argentine domestic obligations.  *See* Argentine Presidential Decree No. 1735/2004, dated Dec. 9, 2004  (English translation) (A-1498-1503); Argentine

Presidential Decree No. 563/2010, dated Apr. 26, 2010 (English translation) (A-1512-1524).[4]  Some of these bonds are fungible bonds indistinguishable from the more than 72% of Argentine Law Bonds that were not issued in any restructuring context.  Plaintiffs offered no evidence on these issues, but simply asserted that the Argentine Law Bonds should be covered by the Injunctions.  In effect, they therefore sought to significantly expand the scope of the Injunctions, without an evidentiary showing to support this extraordinary relief.

---

[4] The circumstances under which these remaining Argentine Law Bonds were issued – in a separate Argentine exchange for defaulted Argentine law domestically-issued debt, and not pursuant to the exchange offers under which the Exchange Bonds for which BNYM is Trustee were issued – were not presented below.  The issue of whether U.S. dollar-denominated Argentine Law Bonds, of which the domestically-issued exchange bonds are a subset, were or were not Exchange Bonds was raised only by plaintiffs' reconsideration application, which should properly have been limited to the matters before the district court on Citibank's original clarification motion that had made no distinction between peso-denominated Argentine Law Bonds and U.S. dollar-denominated Argentine Law Bonds.  *See RST (2005) Inc. v. Research in Motion, Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ("a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court"); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) ( motion for reconsideration is not an "opportunity for making new arguments that could have been previously advanced").  The Republic in its submissions on the reconsideration application focused on the other characteristics of these remaining bonds, but did not focus on the fact that they were issued in a separate local exchange.

## V.    THE JULY 28 ORDER SUBJECT TO THIS APPEAL

On July 28, 2014, the district court reversed itself and entered the July 28 Order currently before the Court, ruling that the Injunctions now enjoin payments due *after* July 30, 2014 (the next payment is scheduled for September 30, 2014)[5] on the dollar-denominated Argentine Law Bonds that in plaintiffs' view are Exchange Bonds.  The July 28 Order further instructs the parties to "devise a way to distinguish between the Repsol bonds and the exchange bonds before their next payment is due" this September.  July 28 Order at 4 (A-2196).

The Order – without legal basis – entirely disregards the fact that the Argentine Law Bonds other than the Repsol bonds are also not Exchange Bonds covered by this Court's prior rulings (and/or the *pari passu* clause) and thus equally fall beyond the scope of the Injunctions.  Moreover, as explained by Citibank, and not contradicted by plaintiffs, it is not possible to distinguish between payments made on Argentine Law Bonds that were issued in exchange for defaulted debt in 2005 and 2010, and payments made on Argentine Law Bonds having nothing to do with those exchanges, where – as is the case here – those bonds bear the same ISINs.  *See* Letter from K. Wagner to Judge Griesa, dated July

---

[5] Payment is due on September 30, 2014 on $1.3 billion of the Argentine Law Bonds.  Another payment is due on December 31, 2014 on the remaining $7.1 billion of Argentine Law Bonds, of which $6.1 billion were not issued in connection with any exchange of defaulted debt, but for separate purposes, including the Repsol settlement.

16

28, 2014, at 2 (A-2188) (compliance is "operationally impossible"); Letter from C. Boccuzzi to Judge Griesa, dated July 27, 2014, at 1(A-2180) (debt cannot be distinguished).

All of these bonds actively trade on the secondary market, so even if it were possible to learn the identity of their holders, that information would provide no insight about when, or in what transaction, the bonds were issued.  By ordering the parties to undertake the impossible task of distinguishing between indistinguishable bonds, the district court's July 28 Order will disrupt the rights of numerous holders of bonds that have *nothing* to do with the dispute before the court, including bonds that were initially issued to Repsol in the framework of mutual settlements/agreements between Repsol and the Republic in entirely separate disputes, and bonds issued to a multitude of others that are unrelated to the Argentine defaults or debt restructurings.

This interference, apart from injuring third-party bondholders, is wholly at odds with one of the principal bases relied on by this Court in affirming the Injunctions – namely plaintiffs' insistence and representation that they demanded injunctions "only" as to Exchange Bonds.  Having achieved their objective in this Court's decisions, plaintiffs have now apparently abandoned that representation to try to interfere with additional bond payments beyond the scope of the Injunctions and the Court's rationale for affirming them.  Their ground is

17

apparently that "anything goes" when it comes to trying to coerce the Republic to pay holdout debt – now totaling over $20 billion, which it simply cannot afford to pay – even though the existing Injunctions have already succeeded in disrupting the funds of the Exchange Bondholders who were the target of those Orders, and have attracted sweeping criticism – from respected third parties with no financial stake in this dispute – for the way they changed the "rules of the game" for sovereign debt.[6]

## SUMMARY OF ARGUMENT

The July 28 Order further, and needlessly, exacerbates the situation created by the Injunctions by extending them beyond the over $28 billion of debt that they already cover and impermissibly beyond their own terms. The Order greatly expands the Injunctions to effectively block funds transfers in connection with payments on an *additional* $8.4 billion of Republic-issued dollar-denominated bonds that are governed by Argentine law and payable exclusively in Argentina. There is no basis in law or equity for such a result.

*First*, the July 28 Order will effectively enjoin the Republic's lawful payment on Republic obligations that are indisputably *not* Exchange

---

[6] Joseph E. Stiglitz and Martin Guzman, *Argentina Default?*, The Guardian, Aug. 7, 2014, http://www.theguardian.com/business/2014/aug/07/argentina-default-griesafault-more-accurate; Floyd Norris, *The Muddled Case of Argentine Bonds*, N.Y. Times, July 24, 2014, http://www.nytimes.com/2014/07/25/business/rulings-add-to-the-mess-in-argentine-bonds.html?_r=0.

Bonds. Although the district court realized the impropriety of such an order, its attempt to fix the problem by directing the parties to somehow identify those bonds and permit payment on them does not – and cannot – work. Those bonds are indistinguishable from the Argentine Law Bonds that the district court held are subject to the July 28 Order, so the inequitable result will be to block payment on *all* Argentine Law Bonds.

*Second*, even with respect to the Argentine Law Bonds that were issued in exchange for defaulted domestically-issued debt and could be distinguished from other debt held by third parties, the July 28 Order should be reversed. The Argentine Law Bonds are fundamentally different from the bonds that were the subject of this Court's and the district court's prior orders, and the district court made no finding below that *pari passu* relief is contractually required here. Nor did the district court sufficiently balance the equities in extending the Injunctions to cover these Argentine Law Bonds. The July 28 Order subjects an additional $8.4 billion of bondholders to potential hardship and the Republic to exposure on related potential claims, without further protecting plaintiffs' claimed *pari passu* rights.

The Court should vacate the July 28 Order.

19

**ARGUMENT**

**THE JULY 28 ORDER MUST BE REVERSED BECAUSE THERE IS NO BASIS TO INTERFERE WITH THE ARGENTINE LAW BONDS**

By blocking the transfer of scheduled interest payments on approximately of $8.4 billion in outstanding principal of dollar-denominated Argentine Law Bonds, the July 28 Order impermissibly expands the scope of the Injunctions beyond their terms and the rulings of this Court into an area where they should not apply, and needlessly harms third-party bondholders and the Republic. Over 72% of the Argentine Law Bonds are not Exchange Bonds even under plaintiff's theory and are therefore indisputably *not* subject to the Injunctions, and the balance of those bonds are also not Exchange Bonds because they were not issued under the BNYM Indenture previously considered by this Court, but in a separate Argentine domestic exchange.  The July 28 Order must be reversed.

**A.    THE INJUNCTIONS APPLY ONLY TO EXCHANGE BONDS PAYABLE TO THE NEW YORK TRUSTEE**

The Injunctions affirmed by this Court enforce the FAA's *pari passu* clause, as this Court construed it, by conditioning the Republic's service of its Exchange Bonds – and *only* its Exchange Bonds – upon the Republic making a "Ratable Payment" to plaintiffs.  *See* Amended Feb. 23, 2012 Order ¶ 2(a) (A-1462) (Republic must make "Ratable Payment" to plaintiffs whenever it pays any amount due on its "Exchange Bonds"); *see also NML Capital, Ltd. v. Republic of*

20

*Argentina*, No. 08 Civ. 6978 (TPG), 2012 WL 5895786, at *2 (S.D.N.Y. Nov. 21, 2012) ("Nov. 21 Opinion") ("[T]he obligation of Argentina under the payment formula in the Injunctions arises when Argentina 'pays any amount due' *to the exchange bondholders*.") (emphasis supplied).  In this context, the term "Exchange Bonds," as it has been used through these proceedings, refers to the Exchange Bonds for which BNYM serves as the bondholders' Trustee.  *See* Nov. 21, 2012 Opinion at 10 (A-1450) (stating that the process for "making payments on the Exchange Bonds" subject to the Orders begins with a transfer of funds to BNYM); Amended Feb. 23, 2012 Order at 5-6, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 21, 2012) (A-1463-1464); *see also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) (expressly relying on district court's description of the BNYM payment process in affirming the Injunctions).

This limitation on the Injunctions to those Exchange Bonds is consistent with the fact that from day one in these proceedings, plaintiffs sought to enjoin *only* payments on the Exchange Bonds that are payable to BNYM.  *See, e.g.*, NML Summary Judgment Br. at 18-19 n.12, Oct. 20, 2012, Dkt. # 230 (targeting funds transfers on 2005 and 2010 Exchange Bonds that flow through BNYM); NML Renewed Specific Performance Br. at 7, Jan. 6, 2012, Dkt. # 361 ("Under the 2005 Exchange Offers, Argentina provides funds to the Bank of New

York or that Bank's 'trustee paying agent'"); *id.* at 7 n.2 ("Under the 2010 Exchange Bonds, the Republic provides funds to BNY Mellon"); Pls. Remand Br. at 10-11, Nov. 13, 2012, Dkt. # 390 ("Argentina transfers funds to [BNYM]" when "making its payments on the Exchange Bonds" subject to the district court's orders).

Accordingly, in the event that a "Ratable Payment" is not made to plaintiffs, the Injunctions enjoin the Republic from making payments due on its Exchange Bonds payable to BNYM, but *not* those that are due on the Republic's other debt obligations. Plaintiffs trained on only the Exchange Bonds paid to BNYM for a very good reason: just as they excluded from the scope of their requested relief any debt that might be held by the Paris Club of other sovereign lenders, or by multi-lateral financial institutions,[7] plaintiffs limited their request to these Exchange Bonds to make it appear more reasonable in the equitable balancing calculus by downplaying issues of extraterritoriality and the scope of the disruptive impact of the injunctive remedy they claimed.

Although plaintiffs contested below the Injunctions' limitation to Exchange Bonds payable to BNYM, they did not dispute the basic proposition that

---

[7] *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012) (plaintiffs "contend that 'a sovereign's *de jure* or *de facto* policy [of subordinating] obligations to commercial unsecured creditors beneath obligations to multilateral institutions like the IMF would *not* violate the Equal Treatment Provision'") (emphasis in original).

the Orders do not apply to debt *not* issued pursuant to an exchange offer. Nor

could they have, as the claimed *pari passu* clause breach upon which they are

based is correspondingly limited to the Republic's treatment of these Exchange

Bonds *vis a vis* the FAA bonds. *See NML Capital, Ltd.*, 699 F.3d at 259 ("The

record amply supports a finding that Argentina effectively has ranked its payment

obligations to the plaintiffs *below those of the exchange bondholders*.") (emphasis

supplied); *id.* at 264 n.16 (declining to hold that a *pari passu* "breach would occur

with *any* non-payment that is coupled with payment on other debt . . . . We simply

affirm the district court's conclusion that Argentina's course of conduct here

did."); *see also NML Capital, Ltd.*, 2012 WL 5895786, at *1 (Injunctions "resulted

from the fact that Argentina had issued new debt pursuant to exchange offers in

2005 and 2010 ('Exchange Bonds'), and was making the payments required on this

new debt, but had declared that it would make no payments to those still holding

the FAA Bonds."). This was no technical limitation, but served to cabin the effects

of a drastic remedy that conditions the rights of third parties on the satisfaction of

plaintiffs' claimed *pari passu* rights. While the Republic disagrees with the

Injunctions, it reaffirms its commitment to resolving all of its outstanding defaulted

indebtedness on a fair, equitable, and sustainable basis. The July 28 Order's

broadening of the Injunctions will not further that resolution, and runs contrary to

the law and the applicable equities.

**B.    THE DISTRICT COURT ERRED IN EXTENDING THE INJUNCTIONS TO ARGENTINE LAW BONDS, INCLUDING THOSE THAT ARE INDISPUTABLY NOT EXCHANGE BONDS**

Notwithstanding the limitation of the Injunctions to plaintiffs' claimed *pari passu* harm, the district court's July 28 Order inequitably extends their application beyond the point of remedying any contractual breach affirmed by this Court to effectively bar the Republic from making any payments due on approximately $8.4 billion of Argentine Law Bonds, comprised of approximately $6.1 billion of debt that was *not* issued pursuant to any exchange of defaulted debt, and $2.3 billion of obligations issued in a purely domestic Argentine exchange for defaulted local debt.  *See* July 28 Order at 4 (A-2196).  That ruling was plain error and warrants vacatur of the July 28 Order.

*First*, the July 28 Order must be vacated because it will bar payments on over $6.1 billion of Argentine Law Bonds not issued in any exchange for any defaulted debt, held by third parties having no connection to the *pari passu* proceedings.  *See Brooks v. Guiliani*, 84 F.3d 1454, 1467 (2d Cir. 1996) ("Injunctive relief should be 'narrowly tailored' to address specific harms and 'not impose unnecessary burdens on lawful activity.'") (internal citations omitted)).  The district court itself acknowledged that payments on such bonds, which make up the vast majority of the Argentine Law Bonds, are not properly subject to the Injunctions.  July 28 Order at 4 (A-2196) (purporting to permit payments on

24

Argentine Law Bonds, except for the "dollar-denominated exchange bonds").  But its instruction to the parties to "fix" this problem themselves by "devis[ing] a way to distinguish between the Repsol bonds and the exchange bonds before the next interest payment is due" on September 30, 2014, July 28 Order at 4 (A-2196), is not only insufficient on its face, because it ignores the $4.35 billion of bonds that were not issued to Repsol that are not Exchange Bonds even in plaintiffs' view, but, more fundamentally, is an order with which compliance is impossible.

As both the Republic and Citibank made clear below, the $6.1 billion of Argentine Law Bonds that were issued outside of any restructuring context are fungible with, and therefore indistinguishable from, the $2.3 billion in outstanding principal of Argentine Law Bonds issued in Argentina's local 2005 and 2010 exchanges.  *See* Letter from K. Wagner to Judge Griesa, dated July 28, 2014, at 2 (A-2188) (compliance is "operationally impossible"); Letter from C. Boccuzzi to Judge Griesa, dated July 27, 2014, at 1(A-2180) (debt cannot be distinguished). The fungible nature of those Argentine Law Bonds is a product of the fact that they bear the same ISINs as certain of the Argentine Law Bonds issued pursuant to the local exchange offers, and bonds with the same ISIN are identical in every other relevant respect.

Thus, for example, although it would be clear to the Republic and Citibank that a bond bearing the ISIN ARARGE03E113 is an Argentine Law

Bond, it is impossible to determine whether that bond is one of the minority of Argentine Law Bonds that in plaintiffs' view is also an Exchange Bond, or is instead one of the more than 72% of Argentine Law Bonds that is not even arguably subject to the Injunctions. Courts routinely reject requests for injunctive relief where it is impossible to craft them without causing this type of collateral damage. *See Jordan v. Metro. Life Ins. Co.*, 280 F. Supp. 2d 104, 112 (S.D.N.Y. 2003) (denying injunctive relief where "[i]t is impossible for the Court to tailor an injunction that would prevent [the purported harm] while preserving" the defendant's ability to engage in lawful actions).

Because compliance with the district court's instruction is not possible, the result of the July 28 Order will be improperly to jeopardize the property of holders of *all* dollar-denominated Argentine Law Bonds, including those indisputably having nothing to do with the *pari passu* dispute before the district court. The July 28 Order offers no basis for such an unjust result, nor did plaintiffs offer one below, where they argued only that blocking the funds of third parties is somehow justified because the Republic purportedly tried to "shield" its domestically-issued, dollar-denominated Argentine Law Bonds from the Injunctions by subsequently mixing them with bonds that are plainly not subject to those orders. This suggestion is wholly incorrect and unsupported by anything in the record. There was nothing nefarious about the Republic's issuance of fungible

26

additional bonds – indeed, the majority of these bonds were issued long *before* the district court entered its *pari passu* orders, and obviously had nothing to do with the Exchange Offers in which plaintiffs chose not to participate.  *See supra* at 4-5.

Issuing additional bond interests under a given ISIN is a typical market practice, and one that benefits bondholders by providing them with additional liquidity.  It is not a basis to later deprive those bondholders of funds that belong to them, particularly here, where the threatened harm to the dollar-denominated Argentine Law Bondholders far exceeds any purported public interest.  *See Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2011) ("balance of equities . . . favors denial of plaintiff's motion [for injunctive relief]" where "[o]n balance, the Court would 'do more harm by enjoining the transaction than by letting it proceed'") (citation omitted).

*Second*, even with respect to the Argentine Law Bonds that were issued in exchange for defaulted local debt and could be distinguished from other debt held by third parties, the July 28 Order must be reversed.  It was for good reason that the Argentine Law Bonds were not the subject of this Court's or the district court's prior rulings in the *pari passu* proceedings – they differ fundamentally from the bonds expressly covered by the Injunctions.  Unlike the latter, the Argentine Law Bonds were not issued under the Trust Indenture, but by Executive Decree, and are governed by Argentine law, are sitused and payable

27

exclusively in Argentina, and did not submit to U.S. jurisdiction.  *See* Prospectus Supplement, dated Dec. 27, 2004 at S-42, S-103, S-113-S-115, S-118 (A-2097-2102).  They were issued in a separate domestic exchange in Argentina for defaulted Argentine domestic debt and, as entirely domestic Argentine transactions, do not use BNYM or any other New York Trustee.  Neither this Court, nor the district court, ever found that the Republic's treatment of these bonds' unique characteristics gave rise to a breach of the *pari passu* clause, or that the balance of the equities favored enjoining payment on them, on top of the more than $28 billion of Exchange Bonds already subject to the Injunctions.  The July 28 Order's extension of the Injunctions to cover them was accordingly error.

Even if the district court were to find in the future that a *pari passu* breach had occurred with respect to the Argentine Law Bonds, injunctive relief would be improper because the equities would decisively tilt towards denying enjoining payment on them.  As an initial matter, the district court's July 28 Order exclusively enjoins conduct by the Republic in the Republic's own territory.  Even when considering enjoining a private party, a court "must take into account when deciding a request for an injunction . . . whether the proposed decree would affect property or would restrain or order the commission of acts beyond its territorial jurisdiction."  11A Charles Alan Wright et al., Federal Practice & Procedure Civ. § 2945 (3d ed. 2013).  When an injunction is directed against a sovereign, it is

particularly important that the district court's equitable power be exercised "with great reluctance" due to the "possibilities of discord and conflict with the authorities of another country."  *Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*, 234 F.2d 633, 647 (2d Cir. 1956); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004) ("injunctive relief may properly be refused when it would interfere with the other nation's sovereignty").  Here, the district court disregarded that the July 28 Order is entirely directed towards the actions of a foreign sovereign within its own territory.

Further, the July 28 Order's extension of the Injunctions will cause serious harm to holders of beneficial interests in the covered bonds and to the Republic, while conferring no discernible benefit to plaintiffs.  The Injunctions already interfere with the rights of the Exchange Bondholders who hold over $28 billion of Exchange Bonds, and plaintiffs' purported *pari passu* rights are accordingly sufficiently protected.  Expanding the Injunctions now to cover an additional $8.4 billion of debt is not only improper given the nature of those bonds, but unnecessarily threatens additional bondholders with financial hardship and would expose the Republic to potential claims that it has not satisfied its obligations on those bonds – on top of the potential exposure already created by the Injunctions – while not furthering the global resolution of Argentine debt that was the presumed motivation for the Injunctions.  July 22, 2014 Hr'g Tr. at 47:2-9

29

(A-2164).  The Court should vacate the July 28 Order and instruct the district court not to interfere with *any* payments on the Argentine Law Bonds.

## CONCLUSION

For the foregoing reasons, the Court should reverse and vacate the July 28 Order.

Dated:     New York, New York
           August 15, 2014

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____/s/ Carmine Boccuzzi_____
        Jonathan I. Blackman (jblackman@cgsh.com)
        Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

*Of Counsel*:

Michael M. Brennan          One Liberty Plaza
                            New York, New York 10006
                            (212) 225-2000

                            *Attorneys for the Republic of Argentina*

30

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with Fed. R. App. P. 32(a)(7)(B)(i), because it contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  New York, New York
        August 15, 2014

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:  _____/s/ Carmine Boccuzzi_____
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for the Defendant-Appellant Republic of Argentina*